**SEYBOLD, d. b. a. HARVEY SEYBOLD & COMPANY, Plaintiff-Appellee, v. PITZ, Defendant-Appellant, and GRAHAM, d. b. a. THE LINDEN FLOOR COMPANY, Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 5264.   Decided December 22, 1955.

2

Mac Lee Henney, Columbus, for plaintiff-appellee.
Brownfield & Malone, Columbus, for defendant-appellant.

(FESS, J, of the Sixth District, NICHOLS, PJ, GRIFFITH, J, of the Seventh District, sitting by designation in the Second District.)

## OPINION

By FESS, J.

Appeal on questions of law from a judgment of the Common Pleas Court in favor of plaintiff-appellee and against defendant John G. Pitz.

Plaintiff was a wholesale distributor of flooring materials and the defendant Graham, who is not a party to this appeal, was engaged in business as Linden Flooring Company in Columbus, Ohio, selling such materials at retail and frequently installing them. For some time prior to 1951 plaintiff had sold materials to Graham, which were recorded upon plaintiff's books of account. During the year 1951, various sales of materials were made to Graham, some of which were on credit and others were "cash sales" or "C. O. D."

The statement of account during 1951 discloses:

| Date | Item | Terms | Amt. | Dis. | Remitted | Date | Bal. |
|---|---|---|---|---|---|---|---|
| 4- 4-51 | | C. O. D. | $ 45.45 | $ .91 | $ 44.54 | 4- 4-51 | |
| 5-14-51 | Asphalt tile | C. O. D. | 106.56 | 5.30 | 101.26 | 5-14-51 | |
| 6-18-51 | Display Kit | C. O. D. 2% | 9.00 | .18 | 8.82 | 6-18-51 | |
| 7- 3-51 | Asphalt | C. O. D. | 10.71 | .54 | 10.17 | 7- 3-51 | |
| 7- 6-51 | Asphalt tile Apt. 18 & Main | 5% | 670.13 | | | | |
| 7-20-51 | All purpose | 2% | 31.85 | | | | |
| 8- 2-51 | To charge Sales tax | | 21.06 | | | | $723.04 |
| 8-20-51 | Plastic | Cash sale | 78.05 | 1.56 | 76.49 | 8-20-51 | |
| 8-20-51 | Plastic | " " | 10.50 | | 10.50 | 8-20-51 | |
| 9-24-51 | Asphalt | " " | 160.80 | | 170.00 | 9-24-51 | |
| | | | | | | | $713.84 |

Underneath the $713.84 is a notation: "$9.20 to be applied on old AC." It will be noted that the September 24th sale, amounting to $160.80,

was paid in cash, but the payment of $170.00 resulted in an overpayment of $9.20 which plaintiff credited to the general indebtedness of Graham on his account, leaving a balance of $713.84 upon which the lien was filed. All of the items purchased by Graham from July 6th to September 24th were used by Graham in remodeling the premises of defendant Pitz, except 30 cartons of the materials purchased on July 6th. Graham failed to pay his indebtedness to plaintiff and on November 23, 1951, plaintiff filed an affidavit for a mechanic's lien on the real estate of defendant Pitz. Thereafter, plaintiff filed the action herein, praying for judgment against Graham on the account and for foreclosure of the mechanic's lien. Prior to trial, Graham was adjudged a bankrupt.

At the conclusion of plaintiff's case, defendant Pitz moved for judgment in his favor on the ground that plaintiff had neither pleaded nor proven that plaintiff had furnished the materials to Graham in pursuance of a contract between Graham and Pitz and also that the lien had not been filed within the time required by law. This motion was overruled and the defendant Pitz elected to stand on such motion. Thereupon the Court orally announced judgment in favor of the plaintiff and against the defendant landowner. Prior to journalization of this decision, plaintiff orally moved the Court for permission to amend his petition and to reopen the case and introduce evidence so as to plead and prove that the materials were furnished Graham pursuant to contract with Pitz.

By entry filed December 1, 1954, leave was granted to amend the petition by inserting "in pursuant of a contract between said defendant Graham and defendant John G. Pitz." Decision on the motion to reopen the case to permit the introduction of evidence relative to such alleged contract was reserved. Thereafter, on March 1, 1955, without reopening the case, an entry was filed finding that there is due plaintiff from defendant Graham the sum of $860.10, including interest, secured by a good and subsisting mechanic's lien on defendant Pitz' premises, duly filed on November 23, 1951. The appeal is taken from this judgment.

The first question presented is whether the evidence discloses that the materials were furnished by the plaintiff to Graham for installation in the Pitz premises by virtue of a contract, expressed or implied, between Graham and Pitz.

In the first case arising under the Mechanics' Lien Act decided by the Supreme Court, Choteau v. Thompson & Campbell (1853), 2 Oh St 114, it said:

"In order to acquire the lien provided by the first section of the act, the labor must be performed, or materials furnished, 'by virtue of a contract or agreement with the owner' of the building. The section so declares, and by this is meant not simply to exclude volunteers (persons who may labor without being employed, or may furnish materials without their being purchased); for such cases seldom, if ever, happen; and should they happen, they would create no debt. But there can be no lien unless there is a debt, and it would therefore be idle to presume an intention to guard against liens that could never exist for want of a debt to support them.

"By 'contract,' then, is meant something more than a mere agree-

ment to do work or sell goods. The contract mentioned in the section is one that has reference to the **purpose** for which the work is to be done, or materials furnished, namely, the erection, alteration, or repair of a craft or building.

\* \* \* \* \*

"Should a man's domestic patch a window or mend a lock in his employer's house, or a farmer's hired man make or repair a door of his barn, no one would say that a lien attached in either case. So, if a material-man sells his wares with no understanding, express or implied, as to their application, he can assert no lien upon the building or vessels in which they may be placed. He trusts to the responsibility of the buyer alone and takes no security. Sells, not for the special purpose named in the statute of 'constructing, altering, or repairing,' but for any purpose that may seem best to the buyer. But it is only where the materials are furnished for a purpose named in the act that a lien is acquired. That they are so furnished, may be proved by evidence of an express agreement, or by proof of circumstances from which the purpose may be inferred. **A tacit understanding may be as good as an express one.**"

This case related to the furnishing of materials directly to the owner rather than to a contractor performing work for the owner.

It has been said that it is vital to the establishment of a lien that the proof disclose that material or labor was furnished under contract with the owner directly, or through a contractor who traced his contract to the owner. **West Side Lumber Co. v. Saylor, 8 Abs 577.** It has been held that in a materialman's action to foreclose a mechanic's lien, the petition must allege a contract between the contractor and the owner. **Becker Plumbing Supply Co. v. Rialto Improvement Co., 36 Oh Ap 102.** See also U. S. Mortgage & Trust Co. v. Wood, 19 O. C. C., 358.

It was within the discretion of the trial court to allow the amendment But did the amendment conform to the proof adduced at the trial, so as to support the judgment? It was stipulated that all of the material sold to Graham from July 6th to September 24th was used by Graham in remodeling the premises of the defendant, except thirty cartons of the materials purchased July 6th. It has been said by way of dicta that where work is done for an individual that is a benefit to him, and he knows that the party doing the work expects to be paid for it, an implied obligation arises on the part of the party benefited to pay what it is reasonably worth. **Ashley v. Hanahan, 56 Oh St 559, 574.** In the Choteau case, supra, the Court said that a tacit understanding may be as good as an express one.

In **Slamey v. The City Material Company, 30 Oh Ap 435,** there was credible although conflicting evidence that the materials ordered by the contractor went into the premises of the owner of the property, and that the owner, if he did not originally order the materials, ratified the act of the contractor in accepting the material with knowledge that it was going into the building. It was contended that the petition was insufficient in failing to allege that the owner had a contract with the party who purchased the materials. The Court held that the evidence submitted on the question created a situation whereby counsel in the

case tried the issue as if there were no infirmity whatsoever with the petition itself, and affirmed the judgment. The Slamey case was determined on error, not appeal. The following year, the same Court, with the same Judge writing the opinion, decided the Becker case, supra, on appeal. The petition alleged that at the request of the contractor, the plaintiff delivered certain materials to the building of the defendant-owner and that said materials were used in such building. The opinion fails to indicate whether any evidence was introduced in support of these allegations and merely states "There was no contract between Reimer (the contractor) and The Rialto Improvement Company (the owner), and an allegation of this nature, we think, would be necessary under §8310 GC." In the instant case, there was likewise no such allegation, but the defect was cured by amendment.

In view of the foregoing decisions, it is concluded that in a material-man's action to foreclose a mechanic's lien, the petition must allege and the evidence must show that the materials were furnished by virtue of a contract, expressed or implied, between the contractor and the owner.

Inasmuch as it is stipulated that all of the materials sold to Graham from July 6th to September 24th were used by him in remodeling the premises of the defendant, except the 30 cartons of materials purchased July 6th, in our opinion there is sufficient evidence from which to draw a reasonable inference that the materials were furnished to the defendant for repair of his premises incident to an implied contract between Graham and defendant. However, as to the amount of the lien the judgment is erroneous to the extent it includes the value of the aforesaid thirty cartons of materials which were apparently used on another job.

The second question arises upon appellant's contention that the materials in question were sold on separate orders on different dates and were furnished to Graham on open running account. With respect to the separate orders, whether a contract of sale be entire or divisible, depends generally upon the intention of the parties, to be ascertained by ordinary rules of construction, considering not only the language of the contract, but also, in cases of uncertainty, the subject matter, the situation of the parties, and the circumstances surrounding the transactions and the construction placed upon the contract by the parties themselves. **Huntington & Fink Co. v. Lake Erie Lumber & Supply Co., 109 Oh St 488.** In the instant case no such evidence incident to ascertainment of the nature or terms of the contract is present.

Evidence of the separate orders alone fails to show whether the contract was entire or divisible. But since the materials went into the building, we are of the opinion that plaintiff did not waive his inchoate right to a lien by charging the materials to Graham on an open account.

The third question is whether the affidavit of lien was filed within sixty days from the date upon which the last material was furnished at the building of the defendant Pitz. Under the stipulation, the materials purchased by Graham on September 24th and paid for by him in cash, went into the building. **Sec. 8314 GC (§1311.06 R. C.)** requires the affidavit to be filed within sixty days from the date on which the last of the material was furnished at the building, making no distinction between furnishing such material on credit or for cash.

In attempting to answer the first question presented, we have drawn an inference that Graham had a tacit understanding or implied contract with Pitz to install the materials furnished by plaintiff in the premises, pursuant to which Pitz obligated himself to pay Graham, but we may not indulge in further inferences concerning the nature, extent, duration or terms of such implied contract or that such materials were furnished pursuant to an entire contract between Graham and Pitz.

It has been held that neither corrective work nor material gratuitously furnished after completion of a contract to remedy defects, extends the time for lien. **Walter v. Brothers, 42 Oh Ap 15;** see also, **Bohunek v. Smith, 36 Oh Ap 146.** In **Fall Savings & Loan Assn. v. Brumit, 28 Oh Ap 60,** the Court found that the contract which the law implied from the mere purchase and delivery of materials previous to June 29, 1926, was fully satisfied by the payments previously made for such materials, and that the contract which the law implied from the subsequent purchase and delivery of materials was a separate and distinct contract, and constituted a new account, and since there was no general contract for the construction or for the furnishing of materials, the lien of the plaintiff dated from the date the first of the materials furnished by it after June 29, 1926.

For all the record shows in the instant case, the materials furnished on September 24th may have been pursuant to an additional contract between Graham and Pitz. Since it was paid for by Graham, no basis for a lien is established.

In Walter v. Brothers, supra, the Court said:

"A true test is whether the alleged repairs are a necessary part of the proper completion and performance of the work which the lien claimant undertook to do, and an attempt in good faith to perform the contract, and not, merely an effort to extend the time for filing an affidavit for a lien. **This is always a question of fact.**" (Emphasis supplied.)

The burden was upon the plaintiff to prove that the materials furnished on September 24th, and paid for in cash, were a necessary part of the proper completion and performance of the contract which, as we have indicated above, is to be implied between Graham and Pitz, and were not furnished pursuant to another or separate contract. Plaintiff has failed to meet this burden. We therefore conclude that the plaintiff has failed to prove that his affidavit for lien was filed within sixty days from the date upon which the last of the material was furnished at the building, by virtue of a contract between Graham and Pitz.

Other errors assigned are found to be nonprejudicial.

Judgment of the Court of Common Pleas reversed and final judgment entered for defendant Pitz, and the cause is remanded to the Court of Common Pleas for execution for costs.

NICHOLS, PJ, GRIFFITH, J, concur.